## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **HECTOR POLANCO,** for himself and all others similarly situated,<br><br>             Plaintiff,<br>   v.<br><br>**PARTS AUTHORITY, LLC, PARTS AUTHORITY, INC.,** and **YARON ROSENTHAL,**<br>             Defendants. | CASE NO. _____<br><br>**COLLECTIVE / CLASS ACTION COMPLAINT**<br><br>**ECF CASE**<br><br>**JURY TRIAL DEMANDED** |

### COLLECTIVE / CLASS ACTION COMPLAINT

Plaintiff Hector Polanco, individually and on behalf of other similarly situated persons, states as follows for his Complaint against Defendants Parts Authority, LLC, Parts Authority, Inc., and Yaron Rosenthal (collectively "Defendants").

### NATURE OF THE ACTION

1.      This action seeks to redress Defendants' systematic policy and practice of paying their W2 employee delivery drivers hourly wages well below the minimum required by the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the following state laws:

- The Arizona Employment Practices and Working Conditions Law ("AEPWCL"), A.R.S. § 23-201 *et seq.*;

- California's minimum wage statutes, Cal. Lab. Code § 1182, *et seq.*;

- Article X, Section 24 of the Florida Constitution, Fla. Const. Art. X, § 24;

- The Maryland Wage and Hour Law ("MWHL"), Md. Lab. & Empl. Code § 3-401 *et seq.*;

- The Massachusetts Fair Wage Law ("MFWL"), M.G.L. Ch., 151 § 1 *et seq.*;

- The New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a *et seq.*;

1

- The New York Labor Law ("NYLL"), NYLL §§ 190 *et seq.* and 650 *et seq.*;

- Article II, Section 34a of the Ohio Constitution, Ohio Const. Art. II, § 34a;

- Oregon's minimum wage law ("OMWL"), Or. Rev. Stat. Ann. § 653.025 *et seq.*;

- The Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101 *et seq.*;

- The Virginia Minimum Wage Act ("VMWA"), Va. Code. Ann. § 40.1-28.10 *et seq.*;

- The Washington Minimum Wage Act ("WMWA"), Wash. Rev. Code § 49.46 *et seq.*; and

- The District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*

2.    Defendants Parts Authority, LLC and Parts Authority, Inc. (collectively "Parts Authority") together own and operate a chain of approximately 200 automobile parts sales and distribution stores in Arizona, California, Florida, Georgia, Maryland, New Jersey, New York, Ohio, Oregon, Pennsylvania, Texas, Virginia, Washington, and the District of Columbia.  Parts Authority also operates numerous automotive parts warehouses in various locations around the nation. They distribute automotive parts to their customers nationwide.

3.    Parts Authority requires its delivery drivers to drive their own personal vehicles for Parts Authority's benefit.  Those delivery drivers pick up assigned automotive parts, which have traveled in foreign and/or interstate commerce, from a Parts Authority store or warehouse and drive the "last leg" or "last mile" to deliver the automotive parts to their destinations, specifically Parts Authority's customers.  Thus, Parts Authority's delivery drivers constitute a class of workers engaged in foreign or interstate commerce except from the Federal Arbitration Act ("FAA") pursuant to Section 1 of the FAA, 9 U.S.C. § 1.

4.    The FLSA and state minimum wage laws require employers to provide their

employees with sufficient reimbursements for employment-related expenses ("kickbacks") to ensure that employees' hourly wages equal or exceed the required minimum wage after such expenses are deducted from nominal hourly wages.  However, Defendants systematically under-reimbursed their delivery drivers for vehicular wear and tear, gas, and other driving-related expenses, thereby ensuring that all of Defendant's delivery drivers are effectively paid well below the minimum wage (nominal wages – unreimbursed vehicle costs = subminimum net wages).

5.      Pursuant to their policies and practices, Defendants failed to reimburse these employee delivery drivers for the cost of driving their own vehicles to deliver Parts Authority's auto parts to Parts Authority's customers, which causes the drivers' net wages to fall below, or to fall further below, the relevant federal or state minimum wage in violation of the FLSA, and materially identical state minimum wage laws, including the AEPWCL, Cal. Lab. Code § 1182.12 *et seq.*, Fla. Const. Art. X, § 24, the MWHL, the MFWA, the NJWHL, the NYLL, Ohio Const. Art. II, § 34a, the OMWL, the PMWA, the WMWA, VMWA, and the DCMWA.

6.      Plaintiff brings his FLSA minimum wage claim (Count I) as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons employed as W2 employee delivery drivers who have driven a vehicle not owned or leased by Parts Authority to deliver from any store or warehouse owned by Defendants in the United States within the three years preceding the filing of this Complaint.

7.      Plaintiff brings his NYLL minimum wage claim (Count III) as a class action pursuant to Fed. R. Civ. P. 23 for all persons employed as W2 employee delivery drivers who have driven a vehicle not owned or leased by Parts Authority to deliver from any store or warehouse owned by Defendants in New York within the six years preceding the filing of this Complaint.

8.      Plaintiff asserts a multi-state minimum wage claim (Count VII) on behalf of all

Parts Authority's W2 employee delivery drivers who have driven a vehicle not owned or leased by Parts Authority to deliver from any store or warehouse owned by Parts Authority New York, Arizona, California, Florida, Maryland, Massachusetts, New Jersey, Ohio, Oregon, Pennsylvania, Virginia, and Washington and in the territory of Washington DC within the applicable limitations periods.

9.     This action seeks to redress Defendants' systematic policy and practice of failing to pay their W2 employee delivery drivers overtime wages in violation of the FLSA and the following state laws:

- California's overtime wage law, Cal. Lab. Code § 510;

- The MWHL, Md. Lab. & Empl. Code § 3-401 *et seq.*;

- The MFWL, M.G.L. Ch. 151, § 1 *et seq.*;

- The NJWHL, N.J. Stat. Ann. § 34:11-56a *et seq.*;

- The NYLL, NYLL §§ 190 *et seq.* and 650 *et seq.*;

- Ohio's wage and hour law ("OWHL"), O.R.C. § 4111.01 *et seq.*;

- The OMWL, Or. Rev. Stat. Ann. § 653.025 *et seq.*;

- The PMWA, 43 P.S. § 333.101 *et seq.*;

- The WMWA, Wash. Rev. Code § 49.46 *et seq.*; and

- The DCMWA, D.C. Code § 32-1001 *et seq.*

10.     Defendants have required their W2 employee delivery drivers to work off-the-clock by requiring them to perform deliveries after the assigned end time of their shifts without pay.

11.     Plaintiff brings his FLSA overtime claim (Count II) as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons employed as W2 employee delivery drivers at any store owned by Defendants in the United States within the three

4

years preceding the filing of this Complaint.

12.     Plaintiff brings his NYLL overtime claim (Count V) as a class action pursuant to Fed. R. Civ. P. 23 for all persons employed as W2 employee delivery drivers at any store owned by Defendants in New York within the maximum limitations period.

13.     Plaintiff asserts a multi-state overtime claim (Count VIII) on behalf of all Parts Authority's W2 employee delivery drivers who have worked for Defendants in New York, California, Maryland, Massachusetts, New Jersey, Ohio, Oregon, Pennsylvania, and Washington and in the territory of Washington DC within the applicable limitations periods.

14.     Pursuant to its under-reimbursement of New York delivery drivers, Defendants failed to pay spread-of-hours pay to those delivery drivers when they worked more than ten hours in a workday.

15.     Plaintiff brings his NYLL spread-of-hours claim (Count IV) as class actions pursuant to Fed. R. Civ. P. 23 for all persons employed as W2 employee delivery drivers who drove vehicles not owned or leased by Parts Authority at any store owned by Defendants in New York within the maximum limitations period.

16.     Pursuant to their policies and practices, Defendants failed to furnish delivery drivers employed in the State of New York with accurate wage statements in violation of NYLL § 195.

17.     Plaintiff brings his NYLL wage statement claim (Count VIII) as class actions pursuant to Fed. R. Civ. P. 23 for all persons employed as W2 employee delivery drivers at any store owned by Defendants in New York within the maximum limitations period.

## JURISDICTION AND VENUE

18.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  29 U.S.C. § 216(b).  Jurisdiction over the FLSA claims asserted herein is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question jurisdiction).

19.     The NYLL authorizes court actions by private parties to recover damages for violation of the NYLL's wage and hour provisions.  NYLL §§ 195 & 663(1).  Jurisdiction over the NYLL claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

20.     The AEPWCL authorizes court actions by private parties to recover damages for violation of the AEPWCL's wage and hour provisions.   Ariz. Rev. Stat. §23-364(H).  Jurisdiction over the AEPWCL claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

21.     The California Labor Code authorizes court actions by private parties to recover damages for violation of the California's minimum wage and overtime statutes.  Cal Lab. Code §§ 510 & 1194 *et seq.*.  Jurisdiction over the California Labor Code claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

22.     The MFWL authorizes court actions by private parties to recover damages for violation of the MFWL wage and hour provisions.  M.G.L. Ch. 151 § 20.  Jurisdiction over the MFWL claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. §

1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

23.     The Florida Constitution, Fla. Const., Art. X § 24 authorizes court actions by private parties to recover damages for violation of § 24 violations. *Id.* at § 24(e). Jurisdiction over the Florida Constitution, Fla. Const., Art. X § 24 claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

24.     The MWHL authorizes court actions by private parties to recover damages for violation of the MWHL's wage and hour provisions. Md. Lab. & Empl. Code § 3-427. Jurisdiction over the MWHL claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

25.     The NJWHL authorizes court actions by private parties to recover damages for violation of the NJWHL's wage and hour provisions. N.J. Stat. Ann. § 34:11-56a25. Jurisdiction over the NJWHL claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

26.     Ohio Const. Art. II, § 34a and the OMFWSA authorizes court actions by private parties to recover damages for violation of the Ohio's wage and hour provisions. Ohio Const. Art. II, § 34a and O.R.S. § 4111.17(D). Jurisdiction over the Ohio Const. Art. II, § 34a and OMFWSA claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

27.     The OMWL authorizes court actions by private parties to recover damages for violation of the OMWL's wage and hour provisions.  Or. Rev. Stat. § 653.055.  Jurisdiction over the OMWL claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

28.     The PMWA authorizes court actions by private parties to recover damages for violation of the PMWA's wage and hour provisions.  43 P.S. §§ 333.101, et seq.  Jurisdiction over the PMWA claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

29.     The WMWA authorizes court actions by private parties to recover damages for violation of the WMWA's wage and hour provisions.  Wash. Rev. Code § 49.46.090.  Jurisdiction over the WMWA claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

30.     The VMWA authorizes court actions by private parties to recover damages for violation of the VMWA wage and hour provisions. VA. Code. Ann. § 40.1-29.  Jurisdiction over the VMWA claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

31.     The DCMWA authorizes court actions by private parties to recover damages for violation of the DCMWA's wage and hour provisions.  D.C. Code § 32-1012.  Jurisdiction over the DCMWA claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims) and on 28

U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

32.     Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendants conducted business in this District, Defendants employed delivery drivers in this District, Defendants have employed Plaintiff in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

33.     Defendants Parts Authority, LLC and Parts Authority, Inc. comprise a "single employer" or "single integrated enterprise" as they share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control. Based on knowledge and information, Defendant Rosenthal ultimately owns a substantial interest in each of the Parts Authority Defendant entities, during a substantial portion of the relevant time period he has served as the Chief Executive Officer ("CEO") and principal of both Parts Authority Defendant entities, and during a substantial portion of the relevant time period he has maintained ultimate control of all Parts Authority's business operations.  The approximately 200 Parts Authority stores are advertised as a single integrated enterprise on Parts Authority's website at www.partsauthority.com.

34.     Alternatively and/or cumulatively, Defendants Parts Authority, LLC and Parts Authority, Inc. constitute "joint employers" with respect to the delivery drivers as they share authority to hire and fire delivery drivers, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise the employees.

35.     Alternatively and/or cumulatively, because the work performed by the delivery drivers simultaneously benefited Defendants Parts Authority, LLC and Parts Authority, Inc. directly or indirectly furthered their joint interests, and because Defendants Parts Authority, LLC and Parts Authority, Inc. are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, either directly or indirectly, by reason of the fact that Defendants Parts Authority, LLC and Parts Authority, Inc. are controlled by, or are under common control with, the other, and thus Defendants Parts Authority, LLC and Parts Authority, Inc. are collectively the "joint employers" of the delivery drivers under the broad definition of "employer" provided by the FLSA and applicable state laws. 29 C.F.R. § 791.2(b) (used in determining "joint employment" under state laws).

36.     On information and belief, Yaron Rosenthal is an individual who resides in Queens Village, New York. During much or all of the relevant period, Defendant Rosenthal exercised operational control over Parts Authority, LLC, Parts Authority, Inc., and other related companies under the Parts Authority brand, oversaw and / or implemented the wage and hour policies and practices implicated in this action, was ultimately responsible for the delivery drivers' wages and wage statements and, as a result, is personally liable for the actions alleged herein.

37.     Plaintiff is a resident of Queens County, New York.  Since about 2007, Plaintiff has been employed by Defendants as a delivery driver at Parts Authority's store located at 126-02 Northern Boulevard, Corona, New York, 11368.  Plaintiff drove his personal vehicle to perform Parts Authority's "last leg" and "last mile" deliveries until about May 2019, when Parts Authority permitted him to drive a company vehicle on the job.

## FACTS

## DEFENDANTS' POLICY OF SYSTEMATICALLY
## UNDER-REIMBURSING DELIVERY DRIVERS

***Defendants' Business***

38.     Parts Authority is a leading distributor of automotive replacement parts, tools and equipment.  Parts Authority is rapidly expanding, and today operates about 200 stores in several states.

39.     As a substantial and important part of its business, Parts Authority provides delivery service of automotive parts, tools, and equipment to its customers nationwide.

40.     Many of the delivery drivers performing the "last mile" or "last leg" deliveries as part of that delivery service are W2 employees of Parts Authority.

41.     Defendants require delivery drivers to drive their personal vehicles and to pay for their own vehicle costs incurred in performing their deliveries such as gasoline, replacement parts and fluids, repairs, maintenance, insurance, taxes, license and registration.

42.     Additionally, the delivery drivers suffer vehicle depreciation as they drive to perform their jobs for Parts Authority.

43.     When unreimbursed expenses are deducted from the delivery drivers' wages, their actual hourly wages fall below the applicable minimum wage.

44.     Instead of reimbursing delivery drivers for their actual expenses, Defendants reimburse the drivers at a flat rate of approximately $0.75 to $1.00 per delivery.  This flat rate has fluctuated between about $0.75 and $1.00 per delivery since 1998.

45.     The average delivery is approximately 5 miles.

46.     Defendants therefore reimburse their delivery drivers at an effective rate of approximately just $0.15 per mile ($0.75 per delivery / 5 average miles per delivery = $0.15 per

mile) to $0.20 per mile ($1.00 per delivery / 5 average miles per delivery = $0.20 per delivery).

47.   For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.

48.   The IRS rate was $0.575 per mile in 2015, $0.54 per mile in 2016, was $0.535 per mile in 2017, was $0.545 per mile in 2018, was $0.58 per mile in 2019, was $0.58 per mile in 2019, was $0.575 per mile in 2020, and is $0.56 per mile in 2021.

49.   Since 2015, reputable companies and agencies that study the cost of owning and operating a motor vehicle and/or estimating reasonable reimbursement rates for vehicular travel, including the American Automobile Association ("AAA") and the United States Bureau of Transportation Statistics ("BTS"), have consistently published the average per-mile cost of operating a vehicle at rates higher than the IRS rate.

50.   The driving conditions associated with delivery driving cause more frequent maintenance costs, higher costs due to repairs associated with delivery driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver.

51.   Defendant's Delivery Drivers experience lower gas mileage and higher repair costs than the average driver due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

52.   Thus, during the relevant period, the IRS rate constitutes a reasonable or conservative approximation of their vehicle costs incurred in performing their jobs for Parts Authority.

53.   Plaintiff and all of his colleagues were paid at or near the applicable minimum wage

rate.  Because Defendants paid the minimum wage, or very close to it, they were legally obligated to reimburse Plaintiff and his colleagues for the full amount of their driving expenses.  However, Defendants failed to reimburse their drivers for the full amount of their driving expenses, thus reducing the delivery drivers' net wages below the minimum.

54.     Defendants' systematic failure to adequately reimburse delivery drivers for their automobile expenses constitutes a "kickback" to Defendants, such that the hourly wages they pay, and have paid, to Plaintiff and other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

55.     Parts Authority's treatment of Plaintiff illustrates Parts Authority's minimum wage violations.

56.     Parts Authority nominally paid Plaintiff the applicable New York City minimum wage rate of $8.75 per hour in 2015, $9.00 per hour in 2016, $11.00 per hour in 2017, $13.00 per hour in 2018, and $15.00 per hour since the beginning of 2019.

57.     Parts Authority reimbursed Plaintiff at a rate of approximately $0.75 to $0.90 per delivery.

58.     Because Plaintiff's average delivery distance was approximately 5 miles, Parts Authority reimbursed him at a rate of approximately $0.15 per mile ($0.75 / 5 miles = $0.15 reimbursement per mile) to $0.18 per mile ($0.90 / 5 average miles = $0.18 reimbursement per mile).

59.     Using the lowest IRS rate during that time as reasonable approximations of Plaintiff's automobile expenses, Defendants under-reimbursed Plaintiff approximately $0.355 per mile ($0.535 - $0.18 per mile reimbursement provided = $0.355 per mile under-reimbursement) to $0.43 per mile ($0.58 - $0.15 per mile reimbursement provided = $0.43 per mile under-

reimbursement).

60.     Because Plaintiff performed about 3 deliveries per hour on average, Parts Authority under-reimbursed him approximately $6.15 per hour (3 average deliveries per hour x 5 average miles per hour x $0.41 per mile under-reimbursement = $6.15 under-reimbursement per hour), for a net wage rate of approximately $2.60 in 2015 ($8.75 per hour nominal wage rate per hour - $6.15 under-reimbursement per hour = $2.60 per hour net wage rate), approximately $2.85 in 2016 ($9.00 per hour nominal wage rate per hour - $6.15 under-reimbursement per hour = $2.85 per hour net wage rate), approximately $4.85 in 2017 ($11.00 per hour nominal wage rate per hour - $6.15 under-reimbursement per hour = $4.85 per hour net wage rate), approximately $6.85 in 2018 ($13.00 per hour nominal wage rate - $6.15 under-reimbursement per hour = $6.85 per hour net wage rate), and $8.85 in 2019 ($15.00 per hour nominal wage rate - $6.15 under-reimbursement per hour = $8.85 per hour net wage rate).

61.     Based on information and belief, all of Defendants' delivery drivers had similar experiences to those of the named Plaintiff as they were subject to the same policy of failing to reimburse for vehicle costs incurred on the job, incurred similar automobile expenses, completed deliveries of similar distances and at similar frequencies, and were paid similar nominal wage rates before deducting unreimbursed business expenses.

***Defendants' Interstate Commerce***

62.     The delivery drivers are engaged in "foreign or interstate commerce" within the scope and meaning of Section 1 of the FAA, 9 U.S.C. § 1 *et seq.*, and are thus exempt from the FAA.  *Id.*

63.     Parts Authority engages in interstate commerce through the national distribution of automotive parts across state lines.

14

64.     Parts Authority's website states "Parts Authority, founded in 1972, is a leading *national distributor* of automotive replacement parts, tools/equipment and transmissions." www.partsauthority.com/about/ (last visited May 20, 2021, emphasis added).

65.     Parts Authority's website states "[t]he Parts Authority team passionately and with integrity, *delivers* high quality name brand automotive replacement parts *throughout the country*, quickly, accurately, with strong technical and warranty backing, and fully supports the repair mechanic with significant inventory, technology and service to ensure they have the right parts, tools and training to successfully service their customer's vehicles." www.partsauthority.com/newcustomer/ (last visited May 20, 2021, emphasis added).

66.     Parts Authority's website says that Parts Authority is "serving customers in the commercial channel, including installers, dealerships, fleets, and *national accounts* as well as *in the e-commerce channel*." www.partsauthority.com/ (last visited May 20, 2021, emphasis added).

67.     Parts Authority's internet home page advertises / boasts its "Fast Delivery" and its "Prompt and accurate same day 'Hot Shot' *delivery service*." www.partsauthority.com/ (emphasis added, last visited May 20, 2021).

68.     Parts Authority utilizes a "hub and spoke" distribution method to deliver its automotive parts to its customers.

69.     Upon information and belief, Parts Authority ships goods across state lines to local/regional distribution centers.  From there, delivery drivers transport the goods to customers. Import records show that Parts Authority imports car parts from foreign countries, which, upon information and belief, are the same car parts which delivery drivers deliver to the individual customers.

70.     Defendant Rosenthal has admitted that automotive parts delivery comprises an

"important part" of Parts Authority's business.

71.     Defendant Rosenthal has also admitted that about 90% of Parts Authority's automotive parts are delivered to Parts Authority's customers.

72.     Defendant Rosenthal has admitted that about 60% of Parts Authority's automotive parts are delivered to Parts Authority's customers by its delivery drivers.

73.     Parts Authority's customers include both professional installers and do-it-yourself vehicle owners.

74.     Some of Parts Authority's delivery drivers regularly drive across state lines to deliver automotive parts.  For example, drivers frequently deliver between New York and New Jersey.  As another example, Parts Authority's delivery drivers often deliver automotive parts between the District of Columbia and Maryland or Virginia.  These drivers engage in the textbook definition of "interstate commerce**.**"

*Defendants' Foreign Commerce*

75.     Parts Authority regularly engages in substantial foreign commerce.

76.     Parts Authority offers brands from around the world. On its website, Parts Authority states, "Parts Authority carries the best brands in the business for domestic and import vehicles.  AC Delco, Motorcraft, Denso, Bosch, KYB, Monroe, Gates, Dorman and Exide *are just a few of the more than 400 suppliers from* <u>*around the world*</u>, that Parts Authority partners with to bring our customer partners the best parts" (emphasis added).

77.     Parts Authority often imports automotive parts directly from foreign suppliers. According to U.S. Customs records, Parts Authority's top suppliers include Qingdao Brembo Trading Co., Ltd (imports from China), Brembo S.P.A. (imports from Spain), Mahle Metal Leve S/A (imports from Brazil) and Fluid System Do Brasil (imports from Brazil).

78.     As an example, Parts Authority imported a shipment of brake liquid from Italy on October 18, 2020.  Parts Authority imported brake liquid, carburetor injection tubes, radiator parts, gasoline cylinder sets, conrod bearings and camshaft bushings, brake pads, brake discs and other car parts from foreign countries into ports in solely California and New York.  Yet these parts, upon information and belief, end up delivered by Parts Authority delivery drivers such as Plaintiff, in states outside of California and New York.

79.     Similarly, import records show that Parts Authority has imported Hella Pagid parts from Germany to a Los Angeles port.

80.     Import records show Parts Authority regularly imports Mahle automotive parts from Brazil into New York.

81.     Import records show that Parts Authority often imports Brembo automotive parts from Italy and Spain into New York and California.

82.     Import records further show that Parts Authority imports automotive parts from countries such as China, Italy, South Korea, Malaysia, Brazil, Singapore, Spain, Germany and Japan.

83.     In 2017, Parts Authority awarded Timken, a parts manufacturer with factories worldwide and based in Europe, its "Supplier of the Year" award.

84.     Parts Authority markets these products from foreign suppliers to its U.S. consumers, including imported products from Timken, Denso, Brembo, and Mahle.

***Parts Authority's "Last Leg" or "Last Mile" Distribution System***

85.     As the final step in Parts Authority's network of foreign and interstate commerce, Parts Authority's delivery drivers perform "last mile" or "last leg" deliveries from Parts Authority's stores and warehouses to Parts Authority's customers.  They drive those automotive

parts, which are traveling in foreign or interstate commerce, from a Parts Authority store or warehouse to their ultimate destinations, specifically Parts Authority's customers.

86.   Parts Authority's automotive parts do not "come to rest," at Parts Authority's warehouses or stores, and thus the interstate transactions do not conclude at those warehouses or stores, but only conclude when Parts Authority's automotive parts are delivered by its delivery drivers to Parts Authority's customers.  Stated differently, Parts Authority's automotive parts are goods that remain in the stream of foreign or interstate commerce until they are delivered by Parts Authority's delivery drivers to Parts Authority's customers.

87.    The vast majority of Parts Authority's merchandise is not held at stores for in-person sales to customers, but such goods are shipped to Parts Authority warehouses and stores simply as part of a process by which Parts Authority transfers the goods to a different vehicle for the "last leg" or "last mile" of a foreign and/or interstate journey.  As  Defendant Rosenthal admits, 90% of Parts Authority's products are delivered to its customers.

88.   Defendant Rosenthal has testified that Parts Authority's delivery drivers perform the same tasks for Parts Authority as Federal Express ("FedEx") and United Parcel Service ("UPS") delivery drivers perform for Parts Authority.

89.   Upon information and belief, Parts Authority's distribution scheme is similar to the distribution scheme utilized by Amazon, except that Parts Authority's distribution is focused on automotive parts, tools, and equipment.  In that scheme, Parts Authority's delivery drivers, similar to Amazon Flex delivery drivers, drive "last leg" or "last mile" deliveries of goods, which have traveled in foreign and / or interstate commerce, to Parts Authority's customers.

90.   Because Parts Authority's delivery drivers complete the delivery of goods that Parts Authority imports and ships internationally and /or across state lines, Parts Authority's delivery

drivers form a part of the channels of foreign and interstate commerce, and are thus a class of workers engaged in foreign and interstate commerce exempt from the FAA.  9 U.S.C. § 1.

***Defendants' Payment of Delivery Drivers***

91.     Defendants typically require the delivery drivers to work at least 40 hours per week.

92.     For most of his term of employment Defendants scheduled Plaintiff to work from 8:00 a.m. to about 6:00 p.m. Monday through Friday and from 8:00 a.m. to about 5:00 p.m. on Saturdays, mostly without breaks.

93.     However, Defendants have required Plaintiff to perform deliveries after the scheduled end time of his shifts, without pay.

94.     Defendants have similarly scheduled their other delivery drivers to work similar hours.

95.     Defendants have similarly required their other delivery drivers to perform deliveries after the scheduled end time of their shifts, also without pay.

96.     Even though Plaintiff and many other delivery drivers worked well over 40 hours per week, Defendants failed and refused to pay the delivery drivers adequate overtime wages, equal to at least one and one-half times their regular wage rates, for all work performed in excess of 40 hours per week.

97.     Accordingly, Defendants systematically underpaid Plaintiff and similarly situated delivery drivers in violation of the FLSA and state overtime wage laws.

***Parts Authority's Failure to Pay Overtime Wages***

98.     Pursuant to their policy and practice, Defendants failed and refused to pay Plaintiff overtime wages, equal to at least one and on-half times his regular wage rates, for all work performed in excess of 40 hours per week.  Specifically, Defendants routinely required Plaintiff to

make final deliveries in the evening after he was required to "clock out", thus forcing him to work off-the-clock.  As a result, Defendants failed to count the hours that Plaintiff worked "off-the-clock."

99.     To illustrate Defendants' violations, Defendants owe Plaintiff unpaid overtime wages of approximately $59.06 per week worked in 2015 (about 4.5 unpaid overtime hours per week x $8.75 New York 2015 minimum wage rate effective in New York City x 1½ overtime factor = $59.06 unpaid overtime pay due per week).

100.     Defendants owe Plaintiff unpaid overtime wages of approximately $60.75 per week worked in 2016 (about 4.5 unpaid overtime hours per week x $9.00 New York 2016 minimum wage rate effective in New York City x 1½ overtime factor = $60.75 unpaid overtime pay due per week).

101.     Defendants owe Plaintiff unpaid overtime wages of approximately $74.25 per week worked in 2017 (about 4.5 unpaid overtime hours per week x $11.00 New York 2017 minimum wage rate effective in New York City x 1½ overtime factor = $74.25 unpaid overtime pay due per week).

102.     Defendants owe Plaintiff unpaid overtime wages of approximately $87.75 per week worked in 2018 (about 4.5 unpaid overtime hours per week x $13.00 New York 2018 minimum wage rate effective in New York City x 1½ overtime factor = $87.75 unpaid overtime pay due per week).

103.     Defendants owe Plaintiff unpaid overtime wages of approximately $101.25 per week worked in 2019 (about 4.5 unpaid overtime hours per week x $15.00 New York 2019 minimum wage rate effective in New York City x 1½ overtime factor = $101.25 unpaid overtime pay due per week).

***"Spread of Hours" Pay***

104.    Pursuant to their policy and practice, Defendants have refused to provide Plaintiff "spread of hours" pay when he has worked in excess of 10 hours in one day, in violation of 12 NYCCR § 142-2.4.

***Parts Authority's Failure to Provide Compliant Wage Statements***

105.    Pursuant to their policy and practice, Defendants failed to provide the delivery drivers employed in New York wage statements containing accurate rate or rates of pay and basis thereof, accurate hourly rate or rates of pay and overtime rate or rates of pay; or the accurate number of hours worked including overtime hours worked; deductions; and net wages.

106.    Pursuant to their policy and practice, Defendants failed to provide Plaintiff and all drivers employed in New York with wage statements accurately depicting deductions or effective net wages after taking into account the vehicle expenses that were left unreimbursed.

107.    Pursuant to their policy and practice, Defendants failed to provide Plaintiff and all drivers employed in New York with wage statements accurately depicting total hours worked and rates of pay, because Defendants routinely required Plaintiff and all drivers employed in New York to perform work off the clock which was not reflected in wage statements.

***Notice and Willfulness***

108.    Defendants' failures, including but not necessarily limited to, failure to reasonably reimburse vehicle costs, payment of subminimum net wages and non-payment of overtime, have been a frequent complaint of at least some of Defendants' delivery drivers; yet Defendants continued to fail to pay their delivery drivers sufficient vehicle reimbursements, minimum wage, and overtime.  Based on those ongoing failures, Defendants also failed to pay required spread-of-hours pay and provide compliant and wage statements.

21

109.    Defendants have been on notice of the above-alleged failures as they have been repeatedly sued and subjected to arbitration claims, including in this District, for the same, or very similar, violations; but Defendants have nevertheless failed and refused to correct such violations.

110.    Defendants have been on notice of the above-alleged failures based on the public proliferation of similar claims lodged against delivery companies since 2009; but Defendants have failed and refused to correct such violations.

111.    Defendants have maintained the information needed to detect their own violations, but Defendants have failed and refused to correct such violations.

112.    Defendants' willfulness is also shown by the size of the difference between required reimbursements and Defendants' reimbursement rates.

113.    Defendants have acted without a good faith basis to believe that their underpayments of wages and other violations alleged herein have been in compliance with the law in that Defendants knowingly, deliberately and/or voluntarily disregarded their obligations to pay the delivery drivers all overtime hours owed, adequate vehicle reimbursements, "spread of hours" pay, and to provide compliant wage statements.

*Net Impact*

114.    The net impact of Defendants' policies and practices, instituted and approved by company managers, is that Defendants have acted without a good faith basis to believe that their underpayment of wages were in compliance with the law, in that Defendants (a) failed to reasonably reimburse the delivery drivers for automobile expenses to such an extent that Defendants reduced, or further reduced, their net wages below the applicable minimum wage rates, (b) failed to pay the delivery drivers legally-required overtime wages, (c) failed to provide "spread of hours" pay, and (d) failed to provide delivery drivers with compliant wage statements required

under New York law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

115.    Plaintiff brings Count I as a collective action pursuant to 29 U.S.C. §216(b) on

behalf of a proposed collective defined to include:

> All persons Defendants employed as a W2 employee delivery driver
> who have driven a vehicle not owned or leased by Parts Authority
> to deliver from any store or warehouse owned by Defendants in the
> United States within the three years preceding the filing of this
> Complaint (hereinafter the "FLSA Minimum Wage Collective").

116.    Plaintiff reserves the right to modify the proposed collective definition at a later

stage of litigation.

117.    Plaintiff is a member of the FLSA Minimum Wage Collective he seeks to represent

because he worked for Defendants as a delivery driver during the relevant period and suffered the

minimum wage violation alleged above.

118.    This action may be properly maintained as a collective action on behalf of the

putative FLSA Minimum Wage Collective because, during the relevant period:

    a.    They have been employed as W2 delivery drivers for Defendants delivering

          auto parts, tools and equipment to Defendants' customers using vehicles not

          owned or leased or maintained by Parts Authority;

    b.    Defendants required them to maintain those automobiles in a safe, legally-

          operable, and insured condition;

    c.    They incurred costs for automobile expenses while delivering products to

          Parts Authority's customers; ;

    d.    They were subject to similar driving conditions, automobile expenses,

          delivery distances, and delivery frequencies;

    e.    They were subject to the same pay policies and practices of Defendants;

f.   They were subject to the same delivery driver reimbursement policy and amounts that under-estimate automobile expenses per mile, and thereby systematically deprived them of reasonably approximate reimbursements resulting in wages below the federal minimum wage in some or all workweeks;

g.   They were reimbursed based on the same amount, or a substantially similar amount, per delivery; and

h.   They were paid so close to the federal minimum wage before deducting unreimbursed business expenses that under-reimbursed vehicle costs reduced their net wages below the federal minimum during some or all workweeks.

119.   Plaintiff brings Count II as a collective action pursuant to 29 U.S.C. §216(b) on behalf of a proposed collective defined to include:

All persons Defendants employed as a W2 employee delivery driver within the three years preceding the filing of this Complaint (hereinafter the "FLSA Overtime Collective").

120.   Plaintiff reserves the right to modify the proposed collective definition at a later stage of litigation.

121.   Plaintiff is a member of the proposed FLSA Overtime Collective he seeks to represent because he worked for Defendants as a delivery driver during the relevant period and suffered the minimum wage violation alleged above.

122.   This action may be properly maintained as a collective action on behalf of the putative FLSA Overtime Collective because, during the relevant period:

a.   They have been employed as W2 delivery drivers for Defendants delivering auto parts, tools and equipment to Defendants' customers using vehicles not

24

owned or leased or maintained by Parts Authority;

b.　　　They have generally been scheduled to work at least 40 hours per week; and

c.　　　Defendants required them to perform deliveries without pay after the end of their assigned shifts.

## STATE LAW CLASS ACTION ALLEGATIONS

*New York Class Actions*

123.　　Plaintiff brings Counts III and IV of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

> All persons Defendants employed as a W2 delivery driver who have driven a vehicle not owned or leased by Parts Authority to deliver from any store or warehouse owned by Defendants in the State of New York within the maximum limitations period (hereinafter the "New York Minimum Wage Class").

124.　　Counts III and IV, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the New York Minimum Wage Class.

125.　　The New York Minimum Wage Class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23(a).

126.　　The New York Minimum Wage Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all New York Minimum Wage Class members in a single action is impracticable. New York Minimum Wage Class members may be informed of the pendency of this class action through mail and/or email.

127.　　Questions of fact and law common to the New York Minimum Wage Class predominate over any questions affecting only individual members. The questions of law and fact common to the New York Minimum Wage Class arising from Defendants' actions include, without limitation, the following:

a.     Whether Plaintiff and the New York Minimum Wage Class have worked as delivery drivers for Defendants;

b.     Whether Plaintiff and the New York Minimum Wage Class have performed similar job duties for Defendants;

c.     Whether Defendants failed to reimburse Plaintiff and the New York Minimum Wage Class for vehicle costs incurred in performing their jobs for Defendants;

d.     Whether Defendants formula and/or methodology used to calculate the payment of reimbursement for vehicle costs resulted in unreasonable under-reimbursement of the New York Minimum Wage Class members' vehicle costs;

e.     Whether Defendants paid Plaintiff and the New York Minimum Wage Class subminimum net wages after subtracting unreimbursed vehicle costs; and

f.     Whether Defendants failed to provide Plaintiff and the New York Minimum Wage Class spread of hours pay as required by the NYLL.

128.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

129.    Plaintiff's claims are typical of those of the New York Minimum Wage Class in that:

a.     Plaintiff and the New York Minimum Wage Class have worked as delivery drivers for Defendants driving delivery vehicles not owned or leased by Parts Authority;

b.     Plaintiff and the New York Minimum Wage Class have performed similar job duties for Defendants;

c.     Defendants required Plaintiff and the New York Minimum Wage Class to maintain their automobiles in a safe, legally-operable, and insured condition;

d.    Plaintiff and the New York Minimum Wage Class incurred costs for automobile expenses while delivering automotive parts for the primary benefit of Defendants;

e.    Plaintiff and the New York Minimum Wage Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.    Plaintiff and the New York Minimum Wage Class were subject to the same pay policies and practices of Defendants;

g.    Plaintiff and the New York Minimum Wage Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the New York minimum wage in some or all workweeks;

h.    Plaintiff and the New York Minimum Wage Class were reimbursed similar set amounts of automobile expenses per mile;

i.    Defendants paid Plaintiff and the New York Minimum Wage Class less than the full New York minimum wage; and

j.    Defendants failed to pay Plaintiff and the New York Minimum Wage Class spread-of-hours pay.

130.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the New York Minimum Wage Class. The presentation of separate actions by individual New York Minimum Wage Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of New York Minimum Wage Class members to protect their interests.

131.    Plaintiff is an adequate representative of the New York Minimum Wage Class because he is a member of the New York Minimum Wage Class and his interests do not conflict with the interests of the members of the New York Minimum Wage Class.  The interests of the New York Minimum Wage Class will be fairly and adequately protected by Plaintiff and his

counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

132.    Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the New York Minimum Wage Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all New York Minimum Wage Class members.

133.    Upon information and belief, the New York Minimum Wage Class includes members that are currently residents of other states.

134.    Plaintiff brings Counts V and VI of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

> All persons Defendants employed as a W2 delivery driver at any store or warehouse owned by Defendants in the State of New York within the maximum limitations period (hereinafter the "New York Overtime Class").

135.    Counts V and VI, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the New York Overtime Class.

136.    The New York Overtime Class satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23(a).

137.    The New York Overtime Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all New York Overtime Class members in a single action is impracticable.  New York Overtime Class members may be informed of the pendency of this class action through mail and/or email.

138.    Questions of fact and law common to the New York Overtime Class predominate

over any questions affecting only individual members. The questions of law and fact common to the New Overtime Class arising from Defendants' actions include, without limitation, the following:

a. Whether Plaintiff and the New York Overtime Class have worked as delivery drivers for Defendants;

b. Whether Plaintiff and the New York Overtime Class have performed deliveries off-the-clock;

c. Whether Defendants failed to pay Plaintiff and the New York Overtime Class for vehicle costs incurred in performing their jobs for Defendants; and

d. Whether Defendants failed to provide Plaintiff and the New York Overtime Class accurate wage statements as required by the NYLL.[1]

139.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

140.   Plaintiff's claims are typical of those of the New York Overtime Class in that:

a. Plaintiff and the New York Overtime Class have worked as delivery drivers for Defendants driving delivery vehicles not owned or leased by Parts Authority;

b. Plaintiff and the New York Overtime Class have performed similar job duties for Defendants;

c. Defendants failed to pay Plaintiff and the New York Overtime Class overtime wages for work performed off-the-clock; and

d. Defendants failed to provide Plaintiff and the New York Overtime Class accurate wage statements.

141.   A class action is the appropriate method for the fair and efficient adjudication of

---

[1] Inaccuracy may be based on failure to correctly report all work time or failure to accurately report net wages.

this controversy. Defendants have acted or refused to act on grounds generally applicable to the New York Overtime Class. The presentation of separate actions by individual New York Overtime Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of New York Overtime Class members to protect their interests.

142.    Plaintiff is an adequate representative of the New York Overtime Class because he is a member of the New York Overtime Class and his interests do not conflict with the interests of the members of the New York Overtime Class.  The interests of the New York Overtime Class will be fairly and adequately protected by Plaintiff and his counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

143.    Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the New York Overtime Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all New York Overtime Class members.

144.    Upon information and belief, the New York Overtime Class includes members that are currently residents of other states.

***Multi-State Class Actions***

145.    Plaintiff brings Count VII of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons who were not paid minimum wages:

> All persons Defendants employed as a W2 delivery driver who
> drove vehicles not owned or leased by Parts Authority in the States

of New York, Arizona, California, Florida, Maryland, Massachusetts, New Jersey, Ohio, Oregon, Pennsylvania, Virginia and Washington and the District of Columbia, during any workweek in the maximum limitations period (hereinafter the "Multi-State Minimum Wage Class").

146.    The minimum wage laws of New York, Arizona, California, Florida, Maryland, Massachusetts, New Jersey, Ohio, Oregon, Pennsylvania, Virginia, Washington and the District of Columbia are materially identical in that they require payment of at least minimum wage.[2]

147.    The multi-state minimum wage claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the Multi-State Minimum Wage Class.

148.    The Multi-State Minimum Wage Class satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

149.    The Multi-State Minimum Wage Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all Multi-State Minimum Wage Class members in a single action is impracticable. Multi-State Minimum Wage Class members may be informed of the pendency of this class action through direct mail and/or email.

150.    Questions of fact and law common to the Multi-State Minimum Wage Class predominate over any questions affecting only individual members. The questions of law and fact common to the Multi-State Minimum Wage Class arising from Defendants' actions include, without limitation, the following:

---

[2] *See* NYLL § 650 *et seq.*; 12 NYCRR § 142-2.1; A.R.S. § 23-362 *et seq.*; Cal. Lab. Code § 1182.12 *et seq.*; Fla. Const. Art. X, § 24; Md. Lab. & Empl. Code § 3-401 *et seq.*; M.G.L. Ch. 151 § 1 *et seq.*; N.J.A.C. § 12:56a *et sq.*; Ohio Const. Art. II § 34a; Or. Rev. Stat. Ann. § 653.010 *et seq.*; 43 P.S. § 333.101 *et seq.*; Va. Code. Ann. § 40.1-28.8 *et seq.*; Wash. Rev. Code Ann. § 49.46.005 *et seq.*; D.C. Code § 32-1001 *et seq.*

a.     Whether Plaintiff and the Multi-State Minimum Wage Class have worked as delivery drivers for Defendants;

b.     Whether Plaintiff and the Multi-State Minimum Wage Class have performed similar job duties for Defendants;

c.     Whether Defendants failed to reimburse Plaintiff and the Multi-State Minimum Wage Class for vehicle costs incurred in performing their jobs for Defendants;

d.     Whether Defendants formula and/or methodology used to calculate the payment of reimbursement for vehicle costs resulted in unreasonable under-reimbursement of Multi-State Minimum Wage Class members' vehicle costs; and

e.     Whether Defendants paid Plaintiff and the Multi-State Minimum Wage Class subminimum net wages after subtracting unreimbursed vehicle costs.

151.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

152.   Plaintiff's claims are typical of those of the Multi-State Minimum Wage Class in that:

a.     Plaintiff and the Multi-State Minimum Wage Class have worked as delivery drivers for Defendants driving delivery vehicles not owned or leased by Parts Authority;

b.     Plaintiff and the Multi-State Minimum Wage Class have performed similar job duties for Defendants;

c.     Defendants required Plaintiff and the Multi-State Minimum Wage Class to maintain their automobiles in a safe, legally-operable, and insured condition;

d.     Plaintiff and the Multi-State Minimum Wage Class incurred costs for automobile expenses while delivering automotive parts for the primary benefit of Defendants;

e.      Plaintiff and the Multi-State Minimum Wage Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f.      Plaintiff and the Multi-State Minimum Wage Class were subject to the same pay policies and practices of Defendants;

g.      Plaintiff and the Multi-State Minimum Wage Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the New York minimum wage in some or all workweeks;

h.      Plaintiff and the Multi-State Minimum Wage Class were reimbursed similar set amounts of automobile expenses per mile; and

i.      Defendants paid Plaintiff and the Multi-State Minimum Wage Class less than the full state minimum wage.

153.    A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Multi-State Minimum Wage Class.  The presentation of separate actions by individual Multi-State Minimum Wage Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Multi-State Minimum Wage Class members to protect their interests.

154.    Plaintiff is an adequate representative of the Multi-State Minimum Wage Class because he is a member of the Multi-State Minimum Wage Class and his interests do not conflict with the interests of the members of the Multi-State Minimum Wage Class he seeks to represent. The interests of the Multi-State Minimum Wage Class will be fairly and adequately protected by Plaintiff and his counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

155.    Maintenance of the claim as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the

Multi-State Minimum Wage Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all Multi-State Minimum Wage Class members.

156.    Plaintiff brings Count VIII of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons who were not paid minimum wages:

> All persons Defendants employed as a W2 delivery driver in the States of New York, California, Maryland, Massachusetts, New Jersey, Ohio, Oregon, Pennsylvania, and Washington and the District of Columbia, during any workweek in the maximum limitations period (hereinafter the "Multi-State Overtime Class").

157.    The overtime pay laws of New York, California, Maryland, Massachusetts, New Jersey, Ohio, Oregon, Pennsylvania, Washington and the District of Columbia are materially identical in that they require payment of at least minimum wage.[3]

158.    The multi-state overtime claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the Multi-State Overtime Class.

159.    The Multi-State Overtime Class satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

160.    The Multi-State Overtime Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all Multi-State Overtime Class members in a single action is impracticable. Multi-State Overtime Class members may be informed of the pendency of this class action through direct mail

---

[3] *See* NYLL § 650 *et seq.*; Cal. Lab. Code § 5810; Md. Lab. & Empl. Code § 3-401 *et seq.*; M.G.L. Ch. 151 § 1 *et seq.*; N.J.A.C. § 12:56a *et sq.*; O.R.C. § 4111.01 *et seq.*; Or. Rev. Stat. Ann. § 653.010 *et seq.*; 43 P.S. § 333.101 *et seq.*; Wash. Rev. Code Ann. § 49.46.005 *et seq.*; D.C. Code § 32-1001 *et seq.*

and/or email.

161.     Questions of fact and law common to the Multi-State Overtime Class predominate over any questions affecting only individual members. The questions of law and fact common to the Multi-State Overtime Class arising from Defendants' actions include, without limitation, the following:

a.      Whether Plaintiff and the Multi-State Overtime Class have worked as delivery drivers for Defendants;

b.      Whether Plaintiff and the Multi-State Overtime Class have performed deliveries off-the-clock; and

c.      Whether Defendants failed to pay Plaintiff and the Multi-State Overtime Class for vehicle costs incurred in performing their jobs for Defendants.

162.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

163.     Plaintiff's claims are typical of those of the Multi-State Overtime Class in that:

a.      Plaintiff and the Multi-State Overtime Class have worked as delivery drivers for Defendants driving delivery vehicles not owned or leased by Parts Authority;

b.      Plaintiff and the New York Multi-State Overtime Class have performed similar job duties for Defendants; and

c.      Defendants failed to pay Plaintiff and the Multi-State Overtime Class overtime wages for work performed off-the-clock.

164.     A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the Multi-State Overtime Class.   The presentation of separate actions by individual Multi-State Overtime Class members creates a risk of inconsistent and varying adjudications, establishing

35

incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Multi-State Overtime Class members to protect their interests.

165.    Plaintiff is an adequate representative of the Multi-State Overtime Class because he is a member of the Multi-State Overtime Class and his interests do not conflict with the interests of the members of the Multi-State Overtime Class he seeks to represent. The interests of the Multi-State Overtime Class will be fairly and adequately protected by Plaintiff and his counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

166.    Maintenance of the claim as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Multi-State Overtime Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all Multi-State Overtime Class members.

## **CLAIMS FOR RELIEF**

### **COUNT I: Violation of the FLSA by Failing to Pay Minimum Wage**

167.    Plaintiff reasserts and re-alleges the allegations set forth above.

168.    At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

169.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations, but none of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

170.    The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of

goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

171.    Defendants are subject to the FLSA's minimum wage requirements because they comprise an enterprise engaged in interstate commerce, and their employees are engaged in commerce.

172.    Under Section 6(a) of the FLSA, 29 U.S.C. § 206(a), employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009. *Id*.

173.    As alleged herein, Defendants have reimbursed their delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

174.    Defendants knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

175.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

176.    Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-wide compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery drivers classified by Defendants as W2 employees in all of Defendant's stores.

177.    Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable

tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

178.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith and with reasonable grounds to believe their actions were lawful, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

179.    As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.  Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT II: Violation of the FLSA by Failing to Pay Overtime Wages

180.    Plaintiff reasserts and re-alleges the allegations set forth above.

181.    At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

182.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from federal overtime wage obligations, but none of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

183.    The FLSA regulates, among other things, the payment of overtime wages by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §207(a).

184.    Defendants are subject to the FLSA's overtime wage requirements because they comprise an enterprise engaged in interstate commerce, and their employees are engaged in commerce.

185.    Under Section 7(a) of the FLSA, 29 U.S.C. § 207(a), employees have been entitled to overtime pay at a rate of one and one-half times their regular wage rates for all time work in excess of forty hours per workweek.

186.    As alleged herein, Defendants have failed to pay such overtime wages by requiring their delivery drivers to complete deliveries after their paid shifts and off-the-clock, thereby denying Plaintiff and similarly situated delivery drivers overtime pay to which they are legally entitled.

187.    Defendants knew or should have known that their pay policy, practice and methodology result in failure to compensate delivery drivers at the federal overtime wage.

188.    Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal overtime wages to Plaintiff and other similarly situated employees.

189.    Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-wide compensation and reimbursement policy. This uniform policy, in violation of the

FLSA, has been applied, and continues to be applied, to all Defendants' delivery drivers who have worked overtime during the recovery period.

190.   Plaintiff and all similarly situated employees are entitled to damages equal to all overtime wages due within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

191.   Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith and with reasonable grounds to believe their actions were lawful, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

192.   As a result of the aforesaid willful violations of the FLSA's overtime wage provisions, overtime pay has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT III:  VIOLATION OF THE NYLL MINIMUM WAGE
### (On Behalf Of The New York Minimum Wage Class)

193.    Plaintiff reasserts and re-alleges the allegations set forth above.

194.    At all relevant times, Plaintiff and all other New York Minimum Wage Class members have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

195.    The NYLL regulates among other things, the payment of minimum wage by "employers" to "employees." NYLL § 652; 12 NYCRR § 142-2.1.

196.    The NYLL also regulates, among other things, deductions from wages by "employers" to "employees." NYLL §§ 193 & 198-b; 12 NYCRR § 142-2.10(b).

197.    Defendants are subject to the NYLL as they constitute an "employer" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(6) & 190(3).

198.    Plaintiff and all other New York Minimum Wage Class members are subject to the NYLL because they are "employees" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(5) & 190(2).

199.    The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, none of the NYLL's exemptions apply to Claimant or all other New York Minimum Wage Class members. *Id.*

200.    Under the NYLL, New York employees have been entitled to be compensated at specified hourly rates depending on their city and county.  NYLL § 652; 12 NYCRR § 142-2.1.

201.    Under the NYLL, "[t]he minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by an employer."  12 NYCRR § 142-2.10(b).

202.    The NYLL further prohibits employers, among other things, from requiring an employee to make payments by separate transaction, unless such charge or payment is permitted as a deduction from wages under the NYLL.  NYLL §§ 193(1) & (b)(2).

203.    The NYLL further prohibits deductions from wages that are not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency and are not expressly authorized in writing by the employees and are not for the benefit of the employee.  NYLL § 193(1) & (b)(2).

204.    The NYLL prohibits persons, among other things, from requesting, demanding, or receiving, either before or after such employee is engaged, a return, donation, or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment.  NYLL § 198-b(2).

205.    As alleged herein, Defendants, pursuant to their policy and practice, have reimbursed Plaintiff and all other New York Minimum Wage Class members less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes their net wages below New York's minimum wage.

206.    Alternatively, Defendants, pursuant to their policy and practice, violated the NYLL by requiring *de facto* deductions for vehicle expenses that are not authorized under the NYLL and/or that reduce Plaintiff's and all other New York Minimum Wage Class members' net wages below the minimum.

207.    Plaintiff and all other New York Minimum Wage Class members are victims of uniform compensation and vehicle cost reimbursement policies.

208.     As a result of the aforesaid violations of the NYLL's minimum wage provisions, Defendants have unlawfully caused *de facto* deductions from Plaintiff's and all other New York Minimum Wage Class members' wages, that resulted in minimum wages being unlawfully withheld by Defendants from Plaintiff and all other New York Minimum Wage Class members.

209.     Plaintiff and the New York Minimum Wage Class are entitled to all unpaid minimum wages.

210.     Defendants are liable for a penalty in the amount of 100% of the total of the amount due as Defendants cannot prove a good faith basis to believe that their underpayments were in compliance with the law.  NYLL §§ 198(1-a) & 663(1).

211.     Plaintiff is entitled to an award of his costs incurred in pursuing this claim.  *Id*.

212.     Plaintiff is entitled to an award of reasonable attorneys' fees incurred in pursuing this claim.  *Id*.

213.     Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate. *Id*.

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) compensatory damages; (2) attorneys' fees and costs as allowed by NYLL § 663(1); (3) pre-judgment and post-judgment interest as provided by NYLL § 663(1); (4) penalty damages as provided during times relevant in NYLL §§ 198(1-a) and 663(1); and (5) such other relief as the Court deems fair and equitable.

### COUNT IV:  VIOLATION OF THE NYLL BY
### FAILING TO PROVIDE "SPREAD-OF-HOURS" PAY
### (On Behalf Of The New York Minimum Wage Class)

214.     Plaintiff reasserts and re-alleges the allegations set forth above.

215.    At all relevant times, Plaintiff and all other New York Minimum Wage Class members have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq*.

216.    Defendants are subject to the NYLL as they constitute an "employer" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(6) & 190(3).

217.    Plaintiff and all other New York Minimum Wage Class members are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(5) & 190(2).

218.    The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, none of the NYLL's exemptions apply to Plaintiff or all other New York Minimum Wage Class members. *Id*.

219.    The NYLL requires, among other things, "spread-of-hours" pay, in addition to the New York minimum wage, for any day in which spread of hours exceeds 10 hours for a minimum wage employee.  12 NYCCR § 142-2.4.

220.    Plaintiff and other New York Minimum Wage Class members consistently worked over 10 hours per workday at a net rate of the New York minimum wage or less.

221.    Defendants have failed to pay Plaintiff and other New York Minimum Wage Class members "spread-of-hours" pay for workdays encompassing more than 10 hours worked.

222.    Plaintiff and all other New York Minimum Wage Class members are entitled to one hour's pay at their basic minimum hourly wage rate for each day in which they worked over 10 hours at a net rate of less than New York's minimum wage rate.  NYLL § 663(1); 12 NYCCR § 142-2.4.

223.    Defendants are liable for a penalty in the amount of 100% of the total of the amount due as Defendants cannot prove a good faith basis to believe that their underpayments were in compliance with the law.  NYLL § 663(1).

224.    Plaintiff is entitled to an award of his costs incurred in pursuing this claim.  *Id.*

225.    Plaintiff is entitled to an award of reasonable attorneys' fees incurred in pursuing this claim.  *Id.*

226.    Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate. *Id.*

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) compensatory damages; (2) attorneys' fees and costs as allowed by NYLL § 663(1); (3) pre-judgment and post-judgment interest as provided by NYLL § 663(1); (4) penalty damages as provided during times relevant in NYLL §§ 198(1-a) and 663(1); and (5) such other relief as the Court deems fair and equitable.

### COUNT V:  VIOLATION OF THE NYLL BY FAILING TO PAY OVERTIME WAGES
### (On Behalf Of The New York Overtime Class)

227.    Plaintiff reasserts and re-alleges the allegations set forth above.

228.    At all relevant times, Plaintiff and all other New York Overtime Class members have been entitled the rights, protections, and benefits provided under the NYLL §§ 650 *et seq.* and 190 *et seq.*

229.    The NYLL regulates, among other things, the payment of overtime wages to employees.  NYLL § 652 *et seq.*; 12 NYCRR § 142-2.2.

230.    Defendants are subject to the NYLL as they are jointly and severally an "employer" within the scope and meaning of the NYLL's broad definition.  NYLL §§ 651(6) & 190(3).

231.     Plaintiff and all other New York Overtime Class members are subject to the NYLL because they are "employees" within the scope and meaning of the NYLL's broad definition. NYLL §§ 651(5) & 190(2).

232.     The NYLL exempts certain categories of employees from New York's minimum wage obligations; however, none of the NYLL's exemptions apply to Claimant or all other New York Overtime Class members.  *Id*.

233.     Under the NYLL, New York employees have been entitled to be compensated for all work performed in excess of forty hours per week at a rate of one and one-half times their regular rate of pay.  NYLL § 652; 12 NYCRR § 142-2.2.

234.     Defendants have failed to pay Plaintiff and the New York Overtime Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

235.     Plaintiff and all other New York Overtime Class members are victims of uniform compensation and vehicle cost reimbursement policies.

236.     Plaintiff and the New York Overtime Class are entitled to all unpaid minimum wages.

237.     Defendants are liable for a penalty in the amount of 100% of the total of the amount due as Defendants cannot prove a good faith basis to believe that their underpayments were in compliance with the law.  NYLL §§ 198(1-a) & 663(1).

238.     Plaintiff is entitled to an award of his costs incurred in pursuing this claim.  *Id*.

239.     Plaintiff is entitled to an award of reasonable attorneys' fees incurred in pursuing this claim.  *Id*.

240.    Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate.

*Id*.

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) compensatory damages; (2) attorneys' fees and costs as allowed by NYLL § 663(1); (3) pre-judgment and post-judgment interest as provided by NYLL § 663(1); (4) penalty damages as provided during times relevant in NYLL §§ 198(1-a) and 663(1); and (5) such other relief as the Court deems fair and equitable.

**COUNT VI:  VIOLATION OF THE NYLL BY**
**FAILING TO PROVIDE WAGE STATEMENTS**
**(On Behalf Of The New York Overtime Class)**

241.    Plaintiff reasserts and re-alleges the allegations set forth above.

242.    At all relevant times, Plaintiff and all other New York Overtime Class members have been entitled to the rights, protections, and benefits provided under the NYLL §§ 650 *et seq*. and 190 *et seq*.

243.    The NYLL regulates, among other things, provision of wage statements by "employers" to "employees."  NYLL § 195(3).

244.    Defendants are subject to the NYLL as they are jointly and severally an "employer" within the scope and meaning of the NYLL's broad definition.  NYLL §§ 651(6) & 190(3).

245.    Plaintiff and all other New York Overtime Class members are subject to the NYLL as they are "employees" within the scope and meaning of the NYLL's broad definition.  NYLL §§ 651(5) & 190(2).

246.    The NYLL requires employers to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or

47

rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages" and further requires that "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."  NYLL § 195(3).

247.    Defendants have failed to provide Plaintiff and the New York Overtime Class with accurate statements of wages as required by NYLL § 195(3) as Defendants wage statements have failed to accurately show the NYLL Overtime Class members' work hours, deductions and / or net wage rates.

248.    Through their failure to provide Plaintiff and all other New York Overtime Class members with the wage statements required by the NYLL, Defendants violated NYLL § 195(3).

249.    Due to Defendants' violations of NYLL § 195(3), Plaintiff and all other New York Overtime Class members are entitled to $250.00 each workday within the maximum limitations period that Defendants failed to provide them with accurate wage statements, or a total of $5,000.00 each.  NYLL § 198(1-d).

250.    Plaintiff is entitled to an award of his costs incurred in pursuing this claim.  *Id.*

251.    Plaintiff is entitled to an award of reasonable attorneys' fees incurred in pursuing this claim.  *Id.*

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) statutory damages pursuant to NYLL § 198(1-d); (2) attorneys' fees and costs as allowed by NYLL § 198(1-d); and (3) such other relief as the Court deems fair

and equitable.

**COUNT VII:  VIOLATION OF MATERIALLY IDENTICAL STATE
MINIMUM WAGE LAWS BY FAILING TO PAY MINIMUM WAGE
AFTER DEDUCTING UNREIMBURSED VEHICLE EXPENSES
(On Behalf Of The Multi-State Minimum Wage Class)**

252.    Plaintiff reasserts and re-alleges the allegations set forth above.

253.    Pursuant to the materially identical minimum wage laws of New York, Arizona, California, Florida, Maryland, New Jersey, Ohio, Oregon, Pennsylvania, Washington, Virginia and the District of Columbia, employees are entitled to be compensated at a specified minimum rate of hourly pay.

254.    By failing to adequately reimburse Plaintiff and members of the Multi-State Minimum Wage Class for the vehicle-related expense they incurred performing deliveries for Defendants, Defendants drove Plaintiff's and members of the Multi-State Minimum Wage Class's wages below the applicable minimums provided for under the materially identical state minimum wage laws.

255.    Defendants violated at least the following materially identical statutes by failing to pay minimum wages as required:

- The Arizona Employment Practices and Working Conditions Law ("AEPWCL"), A.R.S. § 23-201 *et seq.*;

- California's minimum wage statutes, Cal. Lab. Code § 1182, *et seq.*;

- Article X, Section 24 of the Florida Constitution, Fla. Const. Art. X, § 24;

- The Maryland Wage and Hour Law ("MWHL"), Md. Lab. & Empl. Code § 3-401 *et seq.*;

- The Massachusetts Fair Wage Law ("MFWL"), M.G.L. Ch., 151 § 1 *et seq.*;

- The New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a *et seq.*;

49

- The New York Labor Law ("NYLL"), NYLL §§ 190 *et seq.* and 650 *et seq.*;

- Article II, Section 34a of the Ohio Constitution, Ohio Const. Art. II, § 34a;

- Oregon's minimum wage law ("OMWL"), Or. Rev. Stat. Ann. § 653.025 *et seq.*;

- The Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101 *et seq.*;

- The Virginia Minimum Wage Act ("VMWA"), Va. Code. Ann. § 40.1-28.10 *et seq.*;

- The Washington Minimum Wage Act ("WMWA"), Wash. Rev. Code § 49.46 *et seq.*; and

- The District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*

256.    Plaintiff and members of the Multi-State Minimum Wage Class are victims of a uniform compensation policy as the same unlawful compensation policy has been applied to all Defendants' W2 delivery drivers.

257.    No exemptions provided for in any of the materially identical minimum wage statutes apply to Plaintiff or members of the Multi-State Minimum Wage Class.

258.    Plaintiff and members of the Multi-State Minimum Wage Class are entitled to damages equal to the difference between the compensation received and the applicable mandated state minimum wages during the applicable recovery periods plus all other remedies provided under applicable state law.

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request:  (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs; (4) pre-judgment and post-judgment interest as provided by law; (5) other remedies provided under state law; and (6) such other relief as the Court deems fair and equitable.

**COUNT VIII:  VIOLATION OF MATERIALLY
IDENTICAL STATE OVERTIME LAWS
(On Behalf Of The Multi-State Overtime Class)**

259.    Plaintiff reasserts and re-alleges the allegations set forth above.

260.    Pursuant to the materially identical overtime laws of New York, California, Maryland, New Jersey, Ohio, Oregon, Pennsylvania, Washington, and the District of Columbia, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.

261.    Defendants violated at least the following materially identical statutes by failing to pay overtime wages as required:

- California's overtime wage law, Cal. Lab. Code § 510;

- The MWHL, Md. Lab. & Empl. Code § 3-401 *et seq.*;

- The MFWL, M.G.L. Ch. 151, § 1 *et seq.*;

- The NJWHL, N.J. Stat. Ann. § 34:11-56a *et seq.*;

- The NYLL, NYLL §§ 190 *et seq.* and 650 *et seq.*;

- Ohio's wage and hour law ("OWHL"), O.R.C. § 4111.01 *et seq.*;

- The OMWL, Or. Rev. Stat. Ann. § 653.025 *et seq.*;

- The PMWA, 43 P.S. § 333.101 *et seq.*;

- The WMWA, Wash. Rev. Code § 49.46 *et seq.*; and

- The DCMWA, D.C. Code § 32-1001 *et seq.*

262.    Plaintiff and members of the Multi-State Overtime Class are entitled to damages equal to all unpaid overtime wages.

263.    Plaintiff and members of the Multi-State Overtime Class are entitled to damages equal to the difference between the compensation received and the applicable mandated state minimum wages during the applicable recovery periods plus all other remedies provided under applicable state law.

WHEREFORE, Plaintiff and all similarly situated Delivery Drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs; (4) pre-judgment and post-judgment interest as provided by law; (5) other remedies provided under state law; and (6) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his undersigned counsel, hereby demands a jury trial in the above-captioned matter.

Dated:          May 24, 2021                              Respectfully submitted,
                                                          */s/ Jeremiah Frei-Pearson*
                                                          Jeremiah Frei-Pearson
                                                          Andrew White
                                                          (*pro hac vice* forthcoming)
                                                          **FINKELSTEIN, BLANKINSHIP,**
                                                          **FREI-PEARSON & GARBER, LLP**
                                                          One North Broadway, Suite 900
                                                          White Plains, New York 10601
                                                          Telephone: (914) 298-3281
                                                          Facsimile: (914) 824-1561
                                                          jfrei-pearson@fbfglaw.com
                                                          awhite@fbfglaw.com

                                                          Mark Potashnick, MO Bar # 41315
                                                          (*pro hac vice* forthcoming)
                                                          **WEINHAUS & POTASHNICK**
                                                          11500 Olive Blvd., Suite 133
                                                          St. Louis, Missouri 63141
                                                          Telephone: (314) 997-9150 ext. 2
                                                          Facsimile: (314) 984-810
                                                          markp@wp-attorneys.com

                                                          *Attorneys for Plaintiff and Putative Classes*